IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM H. RICHARD, | |
| Plaintiff, | No. 17 C 4677 |
| v. | Hon. Judge Thomas M. Durkin |
| JOHN R. BALDWIN, Director of the Illinois Department of Corrections, RANDY PFISTER, Warden, and RICARDO TEJEDA, Assistant Warden, | Hon. Mag. Judge Jeffrey Cole |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiff William H. Richard brings this action against Defendants John R. Baldwin, Director of the Illinois Department of Corrections (IDOC or Department); Randy Pfister, Warden; and Ricardo Tejeda, Assistant Warden, as follows:

### INTRODUCTION

1. For nearly one year, Plaintiff William Richard spent 24-hours a day locked in a filthy, unsanitary cell at Stateville Correctional Center's Northern Reception Center (NRC) because of his disabilities. The Department's abandonment of Mr. Richard in an overly restrictive and medically inappropriate unit, without the accommodations he needed for his disabilities, violated the Americans with Disabilities Act and the Eighth Amendment.

2. This is a civil rights action brought to redress Mr. Richard's federally protected rights under the Americans with Disability Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, and the Eighth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1341(a)(3) and (4).

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants conduct business in this district, and the events at issue occurred within this district.

## PARTIES

5. Plaintiff William Richard is sixty-four years old. He is currently incarcerated in Dixon Correctional Center, Lee County, Illinois.

6. Defendant John R. Baldwin is the Director of the Illinois Department of Corrections. He has responsibility for IDOC's policies and procedures and the administration of all correctional facilities in the State. This matter is brought against Director Baldwin in his individual and official capacities.

7. Defendant Randy Pfister is currently, and was at the time of relevant events, the Warden of Stateville NRC, employed by the IDOC. This matter is brought against Warden Pfister in his individual capacity.

8. Defendant Ricardo Tejada is currently, and/or was at the time of relevant events, an Assistant Warden at Stateville NRC, employed by the IDOC. This matter is brought against Assistant Warden Tejada in his individual capacity.

## FACTS

9. Mr. Richard has chronic obstructive pulmonary disease (COPD), emphysema, and asthma. Since 2007, he has been prescribed compressed oxygen 24 hours per day, 7 days per week, and a CPAP machine to be used every night while sleeping.

10. Mr. Richard also has significant heart disease. He had open-heart surgery in 2007 and had heart attacks in 2013 and 2014, before his incarceration. Mr. Richard had another heart attack following his eventual transfer out of NRC.

11. Mr. Richard also has diabetes and uses a wheelchair.

12. Mr. Richard entered the IDOC at the NRC on June 22, 2015. The NRC is a highly restrictive facility, designed for short-term housing during the intake process.

13. Most prisoners are transferred out of NRC and to their long-term placement ("home facility") within four to six weeks.

14. At NRC, Mr. Richard was confined to his 8x10 cell. He ate all meals in his cell. He had no access to yard, dayroom, or any type of out-of-cell programming. He was allowed to shower only once a week. He could not even purchase commissary items above $30.

15. The cell itself was filthy and frequented by vermin, including bugs, roaches and rats. The cell had only one small window, which did not open.

16. Roughly four weeks into his time at NRC, an officer came to Mr. Richard's cell to collect him for transfer. However, because of his oxygen machine, the officer told Mr. Richard that he would have to travel separately in a medical transport. The officer told Mr. Richard he would look into the transport and be back, but he never returned.

17. Mr. Williams was not transferred out of NRC for 11 and a half months.

18. Mr. Richard's cell had a metal bed with no mattress, and only one facility-issued sheet and blanket. In the winter, the cell was extremely cold. In the summer, it was hot and humid—it had poor ventilation.

19. On a number of occasions his cell was flooded (with water from the floor above). When this happened, staff did not clean his cell and he was not allowed to leave it. Instead, he would simply have to wait for the water to slowly drain out.

20. At NRC, Mr. Richard suffered a persistent rash on his lower body from the conditions in the cell, whether the metal bed, the filth, or the insects.

21. Mr. Richard's medical conditions were exacerbated by the dangerous physical conditions, isolation, and lack of necessary medical care at NRC.

22. Although NRC staff conducted a medical intake of Mr. Richard upon his arrival, he was denied 15 of the 22 medications that he had been prescribed by physicians prior to his incarceration, including medications he needed for his heart condition.

23. For eleven months, Defendants denied Mr. Richard his CPAP machine. When they finally returned his machine to him, Mr. Richard still could not use it because there was no outlet in his cell to plug in the machine.

24. CPAP machines use air pressure to keep the airways open during sleep, reducing the number of respiratory events— moments when one stops breathing—during sleep. CPAP therapy slows the progression and eases symptoms of COPD, such as shortness of breath, fatigue, chronic coughing, and wheezing, and improves cardiovascular health.

25. Defendants' failure to provide Mr. Richard with a CPAP machine disrupted his sleep and increased his risk of heart attack complications associated with his other medical conditions, including asthma and diabetes.

26. Mr. Richard lived for nearly a year in constant fear that he would die in his sleep. He avoided falling asleep, or would sleep sitting up, in an attempt to keep his airways open. In

addition to his constant anxiety and mental anguish, Mr. Richard's breathing issues were exacerbated by the lack of CPAP therapy and his cardiovascular health was affected.

27. Mr. Richard was allowed to use concentrated oxygen during his incarceration at NRC, but the manner in which the oxygen was provided was unhygienic and dangerous to his health. The tank was kept outside of Mr. Richard's cell with the tubing run along the dirty floor, beneath the steel door of his cell – the same space through which the vermin entered his cell.

28. Mr. Richard was denied the materials he needed to properly sanitize the nasal cannula of his oxygen tube, exposing him to constant risk of respiratory infection for nearly a year.

29. Throughout his time at NRC, Mr. Richard asked correctional officers and other staff that passed by his cell when he would be transferred. He pled with staff to address his conditions at NRC.

30. On one occasion, after about three to four months at NRC, Mr. Richard spoke with Defendant Assistant Warden Tejeda, who expressed surprise that Mr. Richard was still at NRC. Defendant Tejeda told Mr. Richard that he would personally look into the matter further. A few months later, Mr. Richard saw Defendant Tejeda again and, again, Defendant Tejeda said that he was going to look into it. Mr. Richard never heard back from Defendant Tejeda regarding his healthcare or his transfer.

31. By February 23, 2016, if not sooner, Warden Pfister was personally on notice that Mr. Richard had been restricted to NRC for far too long and that his medical needs were not being met at NRC. Moreover, Warden Pfister was aware that the restrictive and isolating conditions of NRC are detrimental to any person's well-being, especially those of a medically fragile individual like Mr. Richard.

5

32. Director Baldwin, either personally or through his staff in the Springfield office of the IDOC, was also aware that Mr. Richard was being held at NRC for far too long. On one occasion, Mr. Richard received a written response from a counselor stating that the supervisors were "waiting on Springfield to tell them to move you. They (supervisors) are aware of your situation – she knew you by name alone – so they are working on this for you."

33. Mr. Richard is and was designated as a minimum-security prisoner. Because of his medical needs, he requires a residential healthcare unit level of care, but instead he was forced to live in solitary confinement for nearly a year.

**COUNT I: VIOLATION OF TITLE II OF THE ADA**
**Against Defendant Baldwin (IDOC)**

34. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

35. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

36. As a state agency, the Illinois Department of Corrections is a public entity within the meaning of Title II of the ADA.

37. Plaintiff is a qualified individual with a disability under the ADA because he is substantially limited in the major life activities of breathing, walking, and sleeping.

38. Defendant violated Title II of the ADA by holding Mr. Richard in unduly restrictive and isolating conditions for significantly longer than other prisoners without disabilities, because of his disability.

39. Defendant violated Title II by depriving Mr. Richard of access to programs otherwise available to minimum-security prisoners because of his disability.

40. Defendant violated Title II by failing to provide Mr. Richard with reasonable accommodations to allow him access to programs and services.

41. The above-described conduct was intentional, and Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

42. As a result of Defendant's actions or inactions, Plaintiff suffered injuries including the loss of programming and privileges, as well as physical, mental and emotional injuries.

### COUNT II: VIOLATION OF THE REHABILITATION ACT
### Against Defendant Baldwin (IDOC)

43. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

44. Section 504 provides that "[]no otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794.

45. The Illinois Department of Corrections is subject to the Rehabilitation Act as a state agency that receives federal financial assistance. 29 U.S.C. § 794(b); C.F.R. 27.1.

46. Plaintiff is a qualified individual with a disability pursuant to the Rehabilitation Act because he is substantially limited in the major life activities of breathing, walking, and sleeping.

47. Defendant violated Rehabilitation Act by holding Mr. Richard in unduly restrictive and isolating conditions for significantly longer than other prisoners without disabilities, because of his disability.

48. Defendant violated Rehabilitation Act by depriving Mr. Richard of access to programs otherwise available to minimum-security prisoners because of his disability.

49. Defendant violated Rehabilitation Act by failing to provide Mr. Richard with reasonable accommodations to allow him access to programs and services.

50. The above-described conduct was intentional, and Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

51. As a result of Defendant's actions or inactions, Plaintiff suffered injuries including the loss of programming and privileges, as well as physical, mental and emotional injuries.

### COUNT III: CONSTITUTIONAL VIOLATION
### 8th Amendment Cruel and Unusual Punishment
### Denial of Adequate Medical Care

52. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

53. As described more fully above, Defendants denied Plaintiff Mr. Richard needed care for his medical conditions in violation of his Eighth Amendment rights.

54. The Defendants acted knowing the Plaintiff was at risk of suffering serious harm due to the lack of medical care, but acted with deliberate indifference in failing to provide such care or ensure that such care was provided.

55. As a result of Defendants' actions or inactions, Plaintiff suffered physical, mental and emotional injuries.

## COUNT IV: CONSTITUTIONAL VIOLATION
### 8th Amendment Cruel and Unusual Punishment
### Conditions of Confinement

56. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

57. As described more fully above, Defendants subjected Plaintiff Mr. Richard to prolonged isolation in unsanitary, dangerous, and overly restrictive conditions for nearly a year in violation of his Eighth Amendment rights.

58. The Defendants acted knowing the Plaintiff was confined in isolation in unsanitary, dangerous, and overly restrictive conditions of confinement and that those conditions posed a risk of harm to Plaintiff. The Defendants acted with deliberate indifference to those risks.

59. As a result of the Defendants' actions or inactions, the Plaintiff suffered injuries including the loss of programming and privileges, as well as physical, mental and emotional injuries.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, in amounts to be determined by a jury of his peers, in addition to the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

PLAINTIFF DEMANDS TRIAL BY JURY.

Dated: July 6, 2018

                                              RESPECTFULLY SUBMITTED,

                                              /s/    Amanda Antholt
                                              One of the Attorneys for Plaintiff

Amanda Antholt
Samantha Reed
Equip for Equality
20 N. Michigan Avenue, Suite 300
Chicago, Illinois 60602
(312) 341-0022
(312) 895-7330 (direct)
amanda@equipforequality.org
samantha@equipforequality.org