IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLAIM H. RICHARD, )<br> )<br>   *Plaintiff*, )<br> )<br>v. )<br> )<br> )    No. 17-cv- 4677<br>JOHN R. BALDWIN, Director of the Illinois )<br>Department of Corrections; RANDY PFISTER, )    Hon. Judge Thomas M. Durkin<br>Warden; RICARDO TEJEDA, )<br>Assistant Warden, )<br> )<br>   *Defendants*. ) | |

**MEMORANDUM OPINION AND ORDER**

William H. Richard brought this action against John Baldwin, Randy Pfister, and Ricardo Tejada regarding conditions at Stateville Correctional Center's Northern Reception Center ("NRC").[1] Richard brings claims under the Americans with Disabilities Act (Count I) and the Rehabilitation Act (Count II) against Baldwin in his official capacity, as well as the Eighth Amendment of the United States Constitution against all the defendants in their individual capacities (Counts III and IV). Baldwin and Pfister have moved to dismiss the constitutional claims for denial of adequate medical care (Count III) and unconstitutional conditions of confinement

---

[1] According to the Illinois Department of Corrections, the Northern Reception and Classification Center sits on Stateville Correctional Center's campus, and functions as the major adult male intake and processing unit for the entire state. The NRC contains 1,800 beds in 24 housing units. Within the NRC is also the minimum-security unit, which can house up to 384 offenders in two units. *See* https://www2.illinois.gov/idoc/facilities/Pages/statevillecorrectionalcenter.aspx.

1

(Count IV) under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendants' motions are denied.

## Background

Richard was formerly an inmate at the NRC. He entered the facility on June 22, 2015 and remained there for eleven and a half months. R. 44 ¶¶ 12, 17. Richard suffers from a number of health conditions, including chronic obstructive pulmonary disease, emphysema, asthma, heart disease, and diabetes. *Id.* ¶¶ 9-11. He requires a wheelchair, uses a continuous positive airway pressure ("CPAP") machine, and needs compressed oxygen at all times. *Id.*

The NRC is a transitional facility, and most prisoners who enter the facility are there only four to six weeks. *Id.* ¶ 13. Perhaps for good reason. Richard alleges his cell at the NRC was filthy and was "frequented" by bugs, roaches, and rats. *Id.* ¶ 15. Richard was confined to his cell 24 hours per day, without access to the yard, dayroom, or other out-of-cell programming. *Id.* ¶ 14. His cell had a metal bed with no mattress and only one sheet and one blanket, and was extremely cold in the winter and extremely hot in the summer due to poor ventilation. *Id.* ¶ 18. On a number of occasions Richard's cell flooded with water from the floor above. When this happened, Richard was forced to stay in his cell while the water slowly drained. *Id.* ¶ 19. Because of these conditions, Richard suffered a persistent rash on his lower body. *Id.* ¶ 20.

Richard also alleges that his pre-existing medical conditions were exacerbated by the cell conditions and lack of necessary medical care at the NRC. *Id.* ¶ 21. Richard was denied fifteen of the twenty-two medications prescribed for his conditions. *Id.* ¶

22. He was denied use of his CPAP machine for eleven months, and when he was finally given his CPAP machine, he could not use it because his cell did not have an electrical outlet. *Id.* ¶ 23. To make matters worse, his air tank was kept outside of his cell and the tubing ran along the dirty floor, beneath the steel door of his cell. *Id.* Richard also alleges that he was denied the materials needed to sanitize the nasal cannula of his oxygen tube. *Id.* ¶ 28. Unlike most prisoners who spend a few weeks at the NRC, Richard spent almost a year there, allegedly because his disabilities required a medical transport that was not arranged for him. *Id.* ¶ 16.

Medical and security staff, including assistant warden defendant Tejeda, were aware of Richard's medical needs. *Id.* ¶¶ 29-32. Richard specifically alleges that after about three to four months at the NRC, Richard spoke with Tejeda, who expressed surprise that Richard was still at the NRC. Tejeda told Richard that he would personally look into the matter. A few months later, Richard saw Tejeda and Tejeda again said that he was going to look into it. *Id.* ¶ 30. Richard never heard back from Tejeda regarding his healthcare or his transfer. Richard also alleges that he asked correctional officers and other staff that passed by his cell when he would be transferred and that he pled with the staff to address his conditions at the NRC. *Id.*

Further, Richard alleges that as of February 23, 2016, defendant Pfister was personally on notice that Richard remained at the NRC and that his medical needs were not being met. *Id.* ¶ 31. Richard points to a grievance response he received that was signed by Pfister. R. 1 at 22. Richard alleges that Pfister also was aware that the

3

conditions at the NRC were detrimental to any person's well-being, especially those of a medically fragile individual such as Richard.

Finally, Richard alleges that defendant Baldwin, either personally or through his staff in Springfield, was aware of the conditions. R. 44 ¶ 32. To this point, Richard alleges that he received a written response from a counselor stating that "the supervisors were 'waiting on Springfield to tell them to move [Richard]. They (supervisors) are aware of your situation – she knew you by name alone – so they are working on this for you.'" *Id*.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

4

liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Analysis

Pfister and Baldwin have moved to dismiss Richard's Eighth Amendment claims against them because they contend Richard has not alleged that they had sufficient knowledge of Richard's medical needs and the conditions he was experiencing at the NRC to state a claim.

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs or conditions of an inmate. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.*

5

At issue here is the subjective component, specifically Pfister and Baldwin's knowledge of Richard's conditions. To establish the subjective component, Richard must plead that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002); *Sanville v. McCaughtry*, 266 F.3d 724, 735 (7th Cir. 2001) (explaining that an official must knowingly disregard a substantial risk to inmate health or safety to be liable). Defendants such as wardens and directors "need not participate directly in a deprivation for liability to follow under § 1983." *Backes v. Vill. Of Peoria Heights, Ill.*, 662 F.3d 866, 869-70 (7th Cir. 2011). These defendants may be held liable if they directed the conduct that caused the violation, or knew about and permitted the conduct. *Sanville*, 266 F.3d at 740; *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."). The Court will address each defendant's knowledge as it relates to each count.

### A. Count III – Medical Care

Count III alleges the defendants failed to provide Richard with the medical care he needed, including a CPAP machine, a sanitary nasal cannula for his concentrated-oxygen tube, and several medications, for the nearly one year that he was held at the NRC. The Court finds Richard's allegations sufficient as to both defendants.

6

As to Pfister, the warden at the NRC, Richard alleges: "By February 23, 2016, if not sooner, Warden Pfister was personally on notice that Mr. Richard had been restricted in NRC for far too long and that his medical needs were not being met at NRC." R. 44 ¶ 31. In support of that allegation, Richard attaches a grievance response that he received from Pfister, marked "received" on February 23, 2016 and signed by the warden himself. *See* R. 1 at 22.

"[T]he Superintendent of Prisons and the Warden of each prison, [are] entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). But individual liability may arise on behalf of a non-medical defendant if, for example, the defendant is made aware of a specific constitutional violation via correspondence from the inmate and the individual declines to take any action to address the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), *as amended* (Aug. 25, 2016), *cert. denied*, 137 S. Ct. 1578 (2017) ("Rarely if ever will an official declare, 'I knew this would probably harm you, and I did it anyway!' Most cases turn on circumstantial evidence.").

That is what Richard alleges here—although Pfister was not directly responsible for Richard's medical care, he was made aware of the situation, and instead of addressing it, turned a blind eye. Pfister argues that Richard failed to allege any personal involvement beyond the grievance process, explaining that if there is no "personal involvement by the warden [in an inmate's medical care] outside the grievance process, that is insufficient to state a claim against the warden." *Neely*

7

*v. Randle,* 2013 WL 3321451 at *3 (N.D. Ill. June 29, 2013) (quoting *Gevas v. Mitchell,* 492 F. App'x 654, 660 (7th Cir. 2012)). But in *Neely* and *Gevas*, the medical needs of the plaintiffs were relatively minor (both involving minor dental injuries) so that it was unlikely the warden would be aware of the plaintiffs' medical needs. Here, however, the situation is different—Richard alleges severe medical needs that were not addressed for eleven months—several months longer than most inmates even spend at the NRC. It does not stretch the imagination to infer that Pfister was aware of Richard's conditions given the extraordinary circumstances. "Of course, discovery will shed light on whether . . . the grievance defendants took the needed action to investigate [Richard's grievances], and reasonably rel[ied] on the judgment of medical professionals. However, these are questions of fact that simply cannot be resolved in the absence of a record." *Perez*, 792 F.3d at 782 (citations omitted); *Farmer v. Brennan,* 511 U.S. 825, 842 (1994) (explaining that whether a prison official had the requisite knowledge is a question of fact).

As to Baldwin, the director of the Illinois Department of Corrections, Richard alleges that Baldwin was directly aware, or knew through his staff, that Richard was medically fragile and had been housed in the NRC for far too long, yet ignored the situation or failed to direct his subordinates to transfer Plaintiff to a medically appropriate facility in a timely manner. In support, Richard points to a response from a counselor that stated that the staff at NRC were "waiting on Springfield to tell them to move you. They (supervisors) are aware of your situation – she knew you by name alone – so they are working on this for you." R. 44 ¶ 32. These allegations plausibly

8

allege that Baldwin was aware of Richard's medical needs and condition at the NRC and failed to take action to remedy the issue for almost a year. Like with Pfister, Richard's allegations regarding the severity of his needs and the uniqueness of his situation suggest that Baldwin had been exposed to information concerning Richard.

Richard has made sufficient allegations as to both Pfister and Baldwin's knowledge such that Richard should be permitted to discover whether they had actual knowledge of the substantial risk of serious harm.

### B. Count IV – Conditions of Confinement[2]

Count IV of Richard's complaint relates to the unsanitary (*i.e.*, insects, rodents, water damage) and overly restrictive conditions (*i.e.*, 24-hour-a-day confinement, no leisure activities) that Richard endured throughout his time at the NRC. As to this claim, the Court easily infers direct knowledge of the conditions of confinement to both Pfister and Baldwin because of the widespread and systematic nature of the conditions Richard experienced.

"Systematic" conditions are those that affect a number of individuals rather than one inmate in isolation. *See Britton v. Williams*, 2017 WL 4410117, at \*4 (N.D. Ill. Oct. 4, 2017) (acknowledging that "no bright-line test determines when a condition is 'potentially systemic' rather than 'clearly localized,'" and concluding that conditions are systemic when they are "unlikely to affect only one inmate in isolation") (citing *Antonelli v Sheahan*, 81 F.3d 1422, 1427-29 (7th Cir. 1996)); *Smith v. Dart*, 803 F.3d

---

[2] Pfister and Baldwin fail to substantively address Richard's Count IV, focusing instead on Richard's allegations with regard to his medical needs. *See* R. 48, 52, 56.

304, 310 n.2 (7th Cir. 2015) ("As the district court correctly noted, the personal involvement of senior jail officials, such as Dart, can be inferred at the motion to dismiss stage, where, as here, the plaintiff alleges 'potentially systemic,' as opposed to 'clearly localized,' constitutional violations.").

Courts throughout the circuit impute knowledge of systematic conditions like those Richard alleges to supervisors such as Pfister and Baldwin. *See Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) (describing similar conditions at the main Stateville facility against Pfister); *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) (holding that "defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions"); *Britton*, 2017 WL 4410117, at \*4 (allegations of "insect and rodent infestation, birds and bird feces, mold, mildew, a broken window with jagged glass sticking out, leaky ceilings and walls" were sufficient to plead knowledge of systematic conditions against Pfister and Baldwin); *Moghaddam v. Godinez*, 2015 WL 300468, at \*2 (N.D. Ill. Jan. 15, 2015) (holding plaintiff had sufficiently alleged systemic conditions at the NRC against Baldwin's predecessor, Director Godinez, where plaintiff alleged that he was forced to sleep on a floor for five days after his arrival and, on another occasion, slept for two days in a caged area with only one sink and toilet for sixty inmates and birds flying overhead and dropping feces). Here too, Richard alleges systematic inadequate jail conditions at the NRC such that knowledge can be inferred to Pfister and Baldwin.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss Counts III and IV, R. 48 and R. 52, are denied.

ENTERED:

Dated: December 17, 2018

Honorable Thomas M. Durkin
United States District Judge